**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

OTIS CHARLES BROWN,               )
                                 )
            Petitioner,          )          3:03-cv-300-RCJ-RAM
                                 )
vs.                              )          **ORDER**
                                 )
STATE OF NEVADA, *et al.*,        )
                                 )
            Respondents.         )
_____/

          This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by Otis C. Brown, a Nevada state prisoner represented by counsel. This matter comes before this Court with respect to its merits.

**I.     Procedural History**

          Petitioner was arrested and charged with attempted murder with the use of a deadly weapon, sexual assault, burglary, robbery with the use of a deadly weapon, and home invasion. Exhibit 6.[1] He was also charged as an habitual criminal. (Exhibit 26).

_____

          [1] The exhibits referenced in this order were filed by petitioner in support of the first amended petition for writ of habeas corpus, at Docket #36, #37, and #38. Additional exhibits were filed by petitioner with the second amended petition at Docket #55 and by respondents with the answer at Docket #57.

1    Following a jury trial held April 28 through April 30, 1998, in the Fourth Judicial District

2    Court of Elko County, Nevada, petitioner was found guilty on all charges.  (Exhibit 33).

3    A hearing on the habitual criminal enhancement was held on June 22, 1998.  (Exhibit 38).

4    On July 1, 1998, petitioner was present at a sentencing hearing.  During that hearing, the court vacated

5    the conviction on the home invasion charge, and sentenced petitioner on the remaining counts as

6    follows: (Count I) a minimum term of ninety six months and a maximum of two hundred forty months

7    with an equal and consecutive term for the use of a deadly weapon; (Count II) life with the possibility

8    of parole after ten years, consecutive to Count I; (Count III) (adjudicated an habitual criminal on this

9    count) life with the possibility of parole after ten years, consecutive to Count II; (Count IV) a minimum

10   of seventy two months with a maximum of one hundred eighty months, concurrent to Count III, with an

11   identical consecutive term for the use of a deadly weapon.  (Exhibit 40).  A judgment of conviction was

12   entered on July 7, 1998.  (Exhibit 41).  The judgment was amended on July 20, 1998.  (Exhibit 46).

13   On July 17, 1998, petitioner filed a Notice of Appeal.  (Exhibit 45).  Petitioner filed his

14   opening brief on November 2, 1998, raising four claims of error.  (Exhibit 47).  The Nevada Supreme

15   Court dismissed the appeal on September 16, 1999.  (Exhibit 51).

16   Petitioner next filed a state petition for post-conviction relief, raising sixteen claims.

17   (Exhibit 59).  He was appointed counsel and the petition was supplemented.  (Exhibit 67).  Counsel

18   raised nine claims of error.  *(Id.).*  The state district court conducted a hearing on the petition.  (Exhibit

19   72).  Thereafter, the petition was dismissed.  (Exhibit 74).  Petitioner appealed.  (Exhibit 75).  On appeal,

20   petitioner raised twelve claims of error.  (Exhibit 79).  On January 7, 2003, the Nevada Supreme Court

21   entered its order affirming the state trial court's denial of relief.  (Exhibit 81).

22   Petitioner submitted a *pro se* petition for writ of habeas corpus to this Court on May 27,

23   2003.  (Docket #7).  This Court appointed counsel to represent petitioner.  (Docket #23).  Through

24   counsel, a first amended petition was filed on October 25, 2004.  (Docket #35).  Respondents moved to

25   dismiss the first amended petition.  (Docket #40).  By order filed June 8, 2005, the Court ruled that

26   Ground 3 of the first amended petition was unexhausted.  (Docket #44).  Petitioner moved for the

2

1   issuance of a stay and abeyance to allow him to return to state court to complete exhaustion.  (Docket

2   #48).   By order filed October 12, 2005, this Court granted petitioner's motion, closing the case

3   administratively, but not entering judgment.  (Docket #52).

4          On November 23, 2005, petitioner filed a second state habeas petition.  (Exhibit 1 to

5   Second Amended Petition, at Docket #55).  On January 3, 2006, the state district court denied the

6   petition.  (Exhibit 4 to Second Amended Petition, at Docket #55).  Petitioner appealed and the Nevada

7   Supreme Court issued its order of affirmance on July 25, 2006.  (Exhibit 7 to Second Amended Petition,

8   at Docket #55).  Petitioner moved to reopen the case (Docket #53) and the Court granted the motion on

9   August 31, 2006.  (Docket #54).  Through counsel, petitioner filed the second amended petition on

10  October 16, 2006.  (Docket #55).  Respondents filed an answer to the second amended petition on

11  November 20, 2006.  (Docket #56).  Petitioner filed a reply on January 22, 2007.  (Docket #63).  The

12  Court now addresses the merits of the second amended petition, the answer, and the reply.

13  **II.      Federal Habeas Corpus Standards**

14         The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

15  provides the legal standard for the Court's consideration of this habeas petition:

16         An application for a writ of habeas corpus on behalf of a person
       in custody pursuant to the judgment of a State court shall not be granted
17     with respect to any claim that was adjudicated on the merits in State court
       proceedings unless the adjudication of the claim –
18
19         (1) resulted in a decision that was contrary to, or involved an
       unreasonable application of, clearly established Federal law, as
20     determined by the Supreme Court of the United States; or

21         (2) resulted in a decision that was based on an unreasonable
       determination of the facts in light of the evidence presented in the State
22     court proceeding.

23         The AEDPA "modified a federal habeas court's role in reviewing state prisoner

24  applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

25  given effect to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state

26  court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28

U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**III.     Discussion**

The second amended petition, filed October 16, 2006, consists of six grounds. (Docket #55). The Court now addresses each ground, in turn.

**A. Ground 1**

Petitioner contends: "The trial court erred in failing to suppress and preclude the in-court identification of Mr. Brown by the complaining witness. As a result, Mr. Brown was denied his right

1  to due process of law and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United

2  States Constitution."  (Second Amended Petition, "SAP," at p. 9).

3          The Due Process Clause bars the admission of unreliable identifications that were

4  obtained by impermissibly suggestive identification procedures. *Moore v. Illinois*, 434 U.S. 220, 227

5  (1977).  In determining whether an identification violated a defendant's due process rights, the trial court

6  must determine whether, under the totality of circumstances, the procedure was so impermissibly

7  suggestive that it created a "very substantial likelihood" of misidentification. *Neil v. Bigers*, 409 U.S.

8  188, 198 (1972).  The factors to be considered in deciding whether in-court identification testimony is

9  sufficient reliable are: (1) the witness's opportunity to view the defendant at the time of the incident; (2)

10  the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4)

11  the level of certainty demonstrated by the witness at the time of the identification procedure; and (5) the

12  length of time between the incident and the identification. *Id.*, at 199-200; *United States v. Jones*, 84

13  F.3d 1206, 1209-10 (9th Cir. 1996).

14          On direct appeal, the Nevada Supreme Court ruled on this issue as follows:

15          Under the circumstances in this case, we conclude that the identification
        was not unnecessarily suggestive because the victim had already
16          repeatedly named Brown as her attacker.  The photograph was used
        merely to confirm her identification, not to suggest who the perpetrator
17          was.  Additionally, we conclude that the victim's identification was
        reliable because she had met Brown two years before, had seen him
18          around their small town on many occasions, and knew him to be the
        boyfriend of a former co-worker.  We conclude that the district court did
19          not abuse its discretion by admitting evidence of the single-photograph
        identification.  Moreover, because the pretrial identification was not
20          tainted, there was no basis for the district court to exclude the victim's in-
        court identification of Brown.  See United States v. Wade, 388 U.S. 218,
21          235 (1967) (indicating that the remedy for an improper pretrial
        identification is to exclude any in-court identification).

22

23  (Exhibit 51, at p. 2).  The factual findings of the state court are presumed correct.  28 U.S.C. §

24  2254(e)(1).  The Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of,

25  clearly established federal law, as determined by the Supreme Court of the United States, and that ruling

26  was not based on an unreasonable determination of facts in light of the evidence.  28 U.S.C. § 2254(d).

5

1    The complaining witness, Jennifer Bailey: (1) had time to view Brown both before and

2    after the sexual assault (Trial Transcript, Volume I, at pp. 11-16 and p. 17); (2) Bailey was in a situation

3    in which she thought she was in danger and she likely paid great attention to what was happening (Trial

4    Transcript, Volume I, at p. 26 and p. 28); (3) the prior identification, a photo shown by Detective Gunter

5    to Bailey, is accurate, as there was never any confusion about the identity of the primary suspect

6    (Preliminary Hearing Transcript, at pp. 54-55 and Trial Transcript at p. 37); (4) Bailey never wavered

7    from her recollection of Brown as the boyfriend of a former co-worker, describing him as "Teresa's

8    boyfriend" and Bailey recalled the hospital room visit by Detective Gunter at which time she had no

9    doubt that Brown was the assailant (Trial Transcript, at p. 37 and p. 43); and (5) Bailey made her

10   identification the same night as the attack (Preliminary Hearing Transcript, at pp. 54-55 and Trial

11   Transcript at p. 37).   The in-court identification was proper under the applicable legal standard

12   announced in *Neil v. Bigers*, 409 U.S. 188, 198 (1972).  Habeas relief is denied with respect to Ground

13   1 of the second amended petition.

14       **B.  Ground 2**

15       Petitioner contends: "The reasonable doubt instruction given during the trial improperly

16   minimized the state's burden of proof.  As a result, Mr. Brown's conviction and sentence are invalid

17   under the federal constitutional guarantees of due process under the Fifth and Fourteenth Amendments

18   to the United States Constitution."  (SAP, at p. 11).

19       Petitioner challenges the trial court's instruction on reasonable doubt.   The jury

20   instruction in question reads as follows:

21           A reasonable doubt is one based on reason.  It is not mere possible doubt
             but is such a doubt as would govern or control a person in the more
22           weighty affairs of life.  If the minds of the jurors, after the entire
             comparison and consideration of all the evidence, are in such a condition
23           that they can say they feel an abiding conviction of the truth of the charge,
             there is not a reasonable doubt.  Doubt to be reasonable must be actual
24           and substantial, not merely possibility or speculation.

25   (Exhibit 30, at Instruction 5).  In *Ramirez v. Hatcher*, 136 F.3d 1209, 1210-11 (9th Cir. 1998), the Ninth

26   Circuit held that an identical reasonable doubt instruction did not violate a defendant's due process

6

1  rights.  The Court will therefore deny habeas relief with respect to Ground 2 of the second amended

2  petition.

3  **C. Ground 3**

4         Petitioner contends: "Mr. Brown was denied his right to an unbiased jury.  As a result,

5  Mr. Brown's conviction and sentence are invalid under the federal constitutional guarantees of due

6  process under the Sixth and Fourteenth Amendments to the United States Constitution." (SAP, at p. 12).

7  Specifically, petitioner alleges that the jury pool did not represent a cross-section of the community

8  because there were no African-Americans or Hispanics on the jury venire and that the trial and

9  conviction by a jury selected in such a racially-discriminatory manner is prejudicial *per se.*  (*Id.*).

10  Petitioner asserts that the jury pool in Elko County, Nevada, is selected by use of a computer program

11  which selects potential jurors from the voter registration list.  (*Id.*).  Petitioner claims that the list selected

12  from the voter registration list is not randomly generated because registered voters who have earned

13  enough "points" via prior jury service or appearing for jury duty can have themselves removed from the

14  list of potential jurors.  (*Id.*).  Respondents argue that this claim is procedurally barred and also lacks

15  merit.

16  **1.  Procedural Default Analysis**

17         The Nevada Supreme Court found this claim to be procedurally barred because it was

18  untimely and successive.  (Exhibit 7 to SAP, at p. 2).  The Nevada Supreme Court imposed the

19  procedural bars of NRS 34.726(1) (timeliness) and NRS 34.810(b)(2) (successive petition).  (*Id.*).  The

20  Ninth Circuit has held application of the procedural bar NRS 34.726(1) is an independent and adequate

21  state ground.  *Moran v. McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996).  The Ninth Circuit has also

22  held that, at least in non-capital cases, application of the procedural bar NRS 34.810 is an independent

23  and adequate state ground.  *Vang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003); *Bargas v. Burns*, 179

24  F.3d 1207, 1210-12 (9th Cir. 1999).

25         Petitioner argues in his reply that the failure of his counsel to raise this claim constitutes

26  good cause to excuse the procedural default.  (Reply, at p. 15).

1    To overcome a procedural default, a petitioner must establish either (1) "cause for the

2    default and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will

3    result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations

4    omitted).  Petitioner also must show prejudice to excuse the procedural default.  The prejudice that is

5    required as part of the showing of cause and prejudice to overcome a procedural default is "actual harm

6    resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (1998); *Magby v. Wawrzaszek*,

7    741 F.2d 240, 244 (9th Cir. 1984).

8    "Cause" to excuse a procedural default exists if a petitioner can demonstrate that some

9    objective factor external to the defense impeded the petitioner's efforts to comply with the state

10    procedural rule. *Coleman v. Thompson*, 501 U.S. at 755; *Murray v. Carrier*, 477 U.S. at 488; *Vickers*

11    *v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998).  Ineffective assistance of counsel may satisfy the cause

12    requirement to overcome a procedural default.  *Murray*, 477 U.S. at 488.  However, for ineffective

13    assistance of counsel to satisfy the cause requirement, the independent claim of ineffective assistance

14    of counsel, itself, must first be presented to the state courts.  *Murray*, 477 U.S. at 488-89.  In addition,

15    the independent ineffective assistance of counsel claim cannot serve as cause if that claim is procedurally

16    defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

17    With respect to the prejudice prong of cause and prejudice, the petitioner bears:

18    the burden of showing not merely that the errors [complained of]
constituted a possibility of prejudice, but that they worked to his actual

19    and substantial disadvantage, infecting his entire [proceeding] with errors
of constitutional dimension.

20

21    *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170

22    (1982).

23    In the instant case, petitioner failed to present the independent claim of ineffective

24    assistance of counsel concerning the jury pool, itself, to the state courts.  Therefore, petitioner's assertion

25    of ineffective assistance of counsel does not constitute cause to satisfy the cause requirement.  *Murray*,

26    477 U.S. at 488-89.  Where the petitioner fails to show cause, the court need not consider whether the

1   petitioner suffered actual prejudice.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*,

2   847 F.2d 528, 530 n.3 (9th Cir. 1988).

3                              **2. Merits Analysis**

4                 As a separate and independent ground for denying relief, the Nevada Supreme Court ruled

5   that petitioner's claim of a *Batson* violation lacked merit.  (Exhibit 7 to SAP, at p. 3).  The Nevada

6   Supreme Court held as follows:

7                  Appellant failed to demonstrate that the group allegedly excluded from
                   the jury venire was a "distinctive" group in the community, that
8                  representation of that group in the jury venires was not unfair and
                   reasonable in relation to the proportion of members of that group in the
9                  community, and that the under-representation of that group in jury venires
                   was due to systemic exclusion of that group in the jury selection process.
10                 Accordingly, we conclude that the district court did not err in denying
                   appellant's petition.

11

12  (Exhibit 7 to SAP, at p. 3).

13                In the reply, petitioner argues that the Nevada Supreme Court's ruling is contrary to

14  United States Supreme Court authority and that the decision was an unreasonable application of clearly

15  established federal law.  (Reply, at p. 16).  To establish a prima facie violation of the right to a jury

16  drawn from a fair cross-section of the community, a petitioner must show: (1) that the group alleged to

17  be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires

18  from which juries are selected is not fair and reasonable in relation to the number of such persons in the

19  community; and (3) that this underrepresentation is due to systemic exclusion of the group in the jury

20  selection process.  *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  "The Sixth Amendment requirement

21  of a fair cross section on the venire is a means of assuring, not a *representative* jury (which the

22  Constitution does not demand), but an *impartial* one (which it does)."  *Holland v. Illinois*, 493 U.S. 474,

23  480 (1990) (emphasis in original).   The Ninth Circuit has rejected challenges based upon

24  underrepresentation of minorities in jury venires pulled from voter registration lists.  *U.S. v. Footracer*,

25  189 F.3d 1058, 1062 (9th Cir. 1999).

26

1    Petitioner contends that he has met the *Duren v. Missouri* three-prong test because:  First,

2  African-Americans and Hispanics represent a distinctive group in the population.  Second, petitioner

3  contends that the representation of minorities in the jury pool was not fair and reasonable in relation to

4  the number of such persons in the community, because "minorities make up approximately 18% of the

5  population of Elko County."  Third, petitioner contends that "the underrepresentation of African-

6  Americans and minorities is due to 'systematic exclusion,' or inherent in the Elko County jury selection

7  process." (Reply, at p. 17).  Petitioner contends that "the jury selection process in Elko County, Nevada

8  is highly susceptible to abuse and is not racially neutral." (*Id.*).  Petitioner asserts the following:

9           In Elko County, the jury pool is selected by use of a computer generated
            program which consists of the voter registration list.  A registered voter
10          who resides in Elko County can garner "points," whereby should that
            resident actually serve on a jury or be called to serve several times, once
11          they reach the required "point level," that resident may request and be
            excluded from any further jury service - ever.  (Ex 84 [Affidavit of
12          Pamela Ramage[2]]).  Mr. Brown is informed and believes, that this sample
            is less inclusive and less representative than feasible; that the computer
13          program used to select members from this sample is not randomly
            generated, thereby creating a list that does not contain a fair cross section
14          of the community and systematically discriminates on the basis of race.

15  (Reply, at p. 17).  Petitioner concludes that: "The impaneling of an all-white jury to try Mr. Brown's case

16  was error." (*Id.*).  This Court finds no merit to petitioner's assertions.

17           For purposes of petitioner's argument, the Court will assume that African-Americans and

18  Hispanic people are a distinctive group of the population in Elko County.  The Court will further assume

19  that minorities make up approximately 18% of the population of Elko County, although petitioner

20  provides no documentary or statistical proof of this assertion.  It is petitioner's argument regarding the

21  third prong of the *Duren* test that is entirely meritless and unsupported by any evidence.  Petitioner

22  makes the bold and unsupported claim that "*the jury selection process in Elko County, Nevada is highly*

23  *susceptible to abuse and is not racially neutral,*" and that this accounts for an underrepresentation of

24  minorities Elko County's jury venires.  (Reply, at p. 17) (emphasis added).  Without any factual,

25  _____

26       [2] Pamela Ramage is identified as a paralegal in the Office of the Federal Public Defender.  Ms.
    Ramage spoke telephonically with representatives of the Elko County's Clerk's Office, who explained
    the County's jury pool selection process.  (Exhibit 84).

1   statistical, or other supporting evidence, petitioner asserts that the computer program used to select jurors

2   is *"not randomly generated"* and that the jury selection process in Elko County *"systematically*

3   *discriminates on the basis of race."* (*Id.*) (emphasis added).  It is unclear whether petitioner is attacking

4   the entire jury selection process in Elko County as discriminatory, or whether petitioner is challenging

5   only the portion of the process that allows registered voters to opt out of jury duty once they have earned

6   enough points by serving on a jury or being called to serve on a jury several times.  In either case,

7   petitioner's arguments are unsupported and meritless.

8           The Ninth Circuit and other courts have consistently rejected challenges based on the

9   underrepresentation of minorities in jury venires pulled from voter registration lists.  *U.S. v. Footracer*,

10   189 F.3d 1058, 1062 (9th Cir. 1999).  Assuming that the potential juror pool in Elko County was

11   predominantly Caucasian (non-minority), those who chose to be excluded from jury service based on

12   earning points for prior jury service would also be Caucasian (non-minority).  Thus, there is no showing

13   that Elko County's jury selection process that allows registered voters to opt out of jury duty (once they

14   have earned enough points by serving on a jury or being called to serve on a jury several times) results

15   in a systemic exclusion of racial minorities.

16           Petitioner submits no evidence to support the sweeping conclusion that the computer

17   program used to select jurors in Elko County is "not randomly generated" and that the process

18   "systematically discriminates on the basis of race."  (Reply, at p. 17).  Petitioner merely offers the

19   affidavit of Pamela Ramage, a paralegal in the Office of the Federal Public Defender, which contains

20   no support or evidence for petitioner's conclusory accusations of discriminatory jury pool selection in

21   Elko County.  (Exhibit 84).  Ms. Ramage's affidavit indicates that she spoke by phone with two deputy

22   clerks in the Elko County Clerk's Office who informed her that "the jury pool is selected by computer

23   from the registered voter list for Elko County and is based on a 'points' system of selection."  (Exhibit

24   84, at p. 1, ¶3).  The "points" system refers to the provision that allows registered voters to opt out of

25   jury duty once they have earned enough points by serving on a jury or being called to serve on a jury

26

1    several times.  (*Id.*).  There is nothing in the affidavit to even suggest support for petitioner's conclusory

2    allegation of systematic racial discrimination in Elko County's jury pool section process.

3           Petitioner has not satisfied the third prong of *Duren v. Missouri*.  Assuming, *arguendo*,

4    that there is an underrepresentation of minorities on Elko County's jury venires, petitioner has offered

5    no evidence that this results from the systemic exclusion of minorities in the jury selection process.

6    *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  Habeas relief on Ground 3 of the second amended petition

7    is denied on two independent bases – as procedurally barred and meritless.

8       **D.  Ground 4**

9           Petitioner contends: "The prosecutor committed misconduct when he referred to Mr.

10   Brown as "O.J. Simpson."  As a result, Mr. Brown's conviction and sentence are invalid under the

11   federal constitutional guarantees of due process and a fair trial under the Fifth and Fourteenth

12   Amendments to the United States Constitution."  (SAP, at p. 13).

13          Prosecutorial misconduct is a valid ground for habeas relief only where the misconduct

14   "so infected the trial with unfairness as to make the resultant conviction a denial of due process."

15   *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  In determining this question, courts consider whether

16   the jury was instructed to decide solely on the basis of the evidence rather than counsel's arguments, and

17   whether the State's case was strong.  *Id.*, at 182.

18          In the instant case, the Nevada Supreme Court ruled on this claim within the context of

19   an ineffective assistance of counsel claim.  The Court found that "the district court sustained trial

20   counsel's objection and admonished the State to avoid references to other proceedings, thus eliminating

21   the danger of prejudice." (Exhibit 81, at p. 7).  The jury was properly instructed that counsel's argument

22   did not constitute evidence.  (Exhibit 30, Jury Instruction #1, at pp. 3-4).  The evidence in this case was

23   overwhelming, including eyewitness identifications and the defendant's wallet which was found at the

24   crime scene.  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  The

25   Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, clearly

26   established federal law, as determined by the Supreme Court of the United States, and that ruling was

1  not based on an unreasonable determination of facts in light of the evidence.  28 U.S.C. § 2254(d).  This

2  Court will deny habeas relief as to Ground 4.

3      **E.  Ground 5**

4      Petitioner contends: "Mr. Brown was denied his right to effective assistance of counsel

5  in violation of the Sixth and Fourteenth Amendments to the United States Constitution."  (SAP, at p.

6  13).  Petitioner claims ineffective assistance of counsel, alleging the following: (1) trial counsel's failure

7  to investigate potential alibi witnesses; (2) trial counsel's failure to move for mistrial or to remove a

8  juror; (3) trial counsel's failure to adequately cross-examine the State's lead detective regarding her

9  attempts to frame petitioner for a prior fabricated sex crime; (4) trial counsel's failure to move for a

10  change of venue; (5) trial and appellate's counsel's failure to move for a mistrial or raise the issue of

11  prosecutorial misconduct based on the prosecutor's reference to the O.J. Simpson case in his closing

12  argument.  (SAP, at pp. 13-17).

13      Ineffective assistance of counsel claims are governed by the two-part test announced in

14  *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a petitioner

15  claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made

16  errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

17  Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v. Taylor,* 529 U.S.

18  362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish ineffectiveness, the defendant

19  must show that counsel's representation fell below an objective standard of reasonableness.  *Id.*  To

20  establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's

21  unprofessional errors, the result of the proceeding would have been different.  *Id.*  A reasonable

22  probability is "probability sufficient to undermine confidence in the outcome."  *Id.*  Additionally, any

23  review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective

24  at the time of the challenged conduct, in order to avoid the distorting effects of hindsight.  *Strickland,*

25  466 U.S. at 689.  It is the petitioner's burden to overcome the presumption that counsel's actions might

26  be considered sound trial strategy.  *Id.*

13

1    Ineffective assistance of counsel under *Strickland* requires a showing of deficient

2    performance of counsel resulting in prejudice, "with performance being measured against an 'objective

3    standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S.

4    374, 380 (2005) (quotations omitted).  If the state court has already rejected an ineffective assistance

5    claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable

6    application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003).  There is a

7    strong presumption that counsel's conduct falls within the wide range of reasonable professional

8    assistance.  *Id.*

9            **1.  Ground 5(a)**

10    Petitioner contends:  "Trial counsel was ineffective for failing to investigate potential

11    alibi witnesses."  (SAP, at p. 14).  Specifically, petitioner contends that counsel failed to investigate and

12    call Jonathan Heimerdinger, Mary Marie Mason, the petitioner himself, Becky Lacombe, and

13    investigator Stephen Nevin.  (*Id.*).

14            In the instant case, the record indicates that counsel did investigate alibi witnesses.  In

15    denying petitioner's first post-conviction habeas petition, the state district court found that:

16            The testimony of the trial counsel was that Mr. Brown gave him two
         names of possible alibi witnesses.  The first name was Teresa Mason, Mr.
17            Brown's fiancee.  She was prepared to testify that Mr. Brown had come
         by her residence at approximately 10:00 p.m. and that they had gotten
18            high.  The testimony would have also revealed that she and Mr. Brown
         had been high all day.  Trial counsel also arranged for his investigator to
19            speak with Jonathan Heimerdinger as a potential alibi witness.  During
         his interview with the defense investigator, Mr. Heimerdinger indicated
20            that his first contact with Mr. Brown was in the early morning hours (2:00
         to 3:00 a.m.) of the day **after** the crime took place and therefore he was
21            not considered an alibi witness.  The court further finds that the decision
         whether the call a witness lies with trial counsel.  The court finds that the
22            decision not to call either of these alibi witnesses was based on sound
         trial strategy.

23

24    (Exhibit 74, at p. 2) (emphasis in original).  The Nevada Supreme Court found that "in his affidavit and

25    at the evidentiary hearing, trial counsel stated that he investigated potential alibi witnesses and

26

                                              14

1   determined that they could not provide appellant with a credible alibi." (Exhibit 81, at p. 6; Exhibit 72,

2   at 25; Exhibit 85, Affidavit of Trial Counsel Mark Torvinen, at pp. 7-8).

3        The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1).

4   Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or

5   involved an unreasonable application of, clearly established federal law, as determined by the United

6   States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light

7   of the evidence presented in the state court proceeding.

8        This Court has reviewed the record with respect to petitioner's claim of ineffective

9   assistance of counsel.  Defense counsel investigated potential alibi witnesses and made a reasonable

10  tactical decision not to call any of those witnesses.  Counsel's performance did not fall beyond an

11  objective standard of reasonableness under prevailing norms.  Nor has petitioner satisfied the prejudice

12  prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of counsel, the

13  outcome of the proceeding would have been different.  Petitioner's counsel was not ineffective and this

14  Court will deny habeas relief with respect to Ground 5(a).

15       **2. Ground 5(b)**

16       Petitioner contends: "Trial counsel was ineffective for failure to move for a mistrial or

17  to remove a juror." (SAP, at p. 14).  Petitioner claims that counsel should have moved for a mistrial or

18  to remove a juror (Ms. Milne) when she allegedly mocked petitioner by making a slashing gesture across

19  her neck.  (*Id.*).  Petitioner complains that the issue was discussed in the judge's chambers, outside

20  petitioner's presence.  (*Id.*).  This claim was denied on the merits by the Nevada Supreme Court, as

21  follows:

22           This claim is meritless.  First, it is clear from the record that appellant
             authorized his trial attorney to appear in chambers without him regarding
23           the alleged juror misconduct.  Second, having the in camera interview,
             the juror denied having made the gesture or having any bias against
24           appellant.  At the evidentiary hearing, trial counsel testified that given the
             juror's representations, he perceived no basis for a motion for mistrial.
25           We conclude that appellant has failed to demonstrate that his counsel's

26

1    decision with regard to the juror was objectively unreasonable or that he
     was prejudiced.
2

3   (Exhibit 81, at p. 4).

4          The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).

5   Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or

6   involved an unreasonable application of, clearly established federal law, as determined by the United

7   States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light

8   of the evidence presented in the state court proceeding.

9          This Court has reviewed the record with respect to petitioner's claim of ineffective

10  assistance of counsel.  Given the lack of evidence and the *in camera* discussion of the matter in the

11  judge's chambers, defense counsel acted reasonably, as there was no credible basis to move for a

12  mistrial.  Counsel's performance did not fall beyond an objective standard of reasonableness under

13  prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he has

14  not shown that, but for the alleged errors of counsel, the outcome of the proceeding would have been

15  different.  Petitioner's counsel was not ineffective and this Court will deny habeas relief with respect to

16  Ground 5(b).

17         **3.  Ground 5(c)**

18         Petitioner contends:  "Trial counsel was ineffective for failure to adequately cross-

19  examine the State's lead detective regarding her attempts to frame Mr. Brown for a prior fabricated sex

20  crime."  (SAP, at p. 15).  This claim was denied on the merits by the Nevada Supreme Court, as follows:

21         [A]ppellant's trial attorney explained that because the instant offenses
           included sexual assault, he believed examining the witness regarding
22         "another instance wherein [appellant] had been accused of the same
           offense" was not in appellant's best interest.

23  (Exhibit 81, at pp. 5-6).  The factual findings of the state court are presumed correct.  28 U.S.C. §

24  2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

25  to, or involved an unreasonable application of, clearly established federal law, as determined by the

26

16

1  United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

2  in light of the evidence presented in the state court proceeding.

3        This Court has reviewed the record with respect to petitioner's claim of ineffective

4  assistance of counsel. Counsel's performance did not fall beyond an objective standard of

5  reasonableness under prevailing norms. Nor has petitioner satisfied the prejudice prong of the *Strickland*

6  analysis, as he has not shown that, but for the alleged errors of counsel, the outcome of the proceeding

7  would have been different. Petitioner's counsel was not ineffective and this Court will deny habeas

8  relief with respect to Ground 5(c).

9        **4. Ground 5(d)**

10        Petitioner contends: "Trail counsel was ineffective for failing to move for a change of

11  venue." (SAP, at p. 16). Petitioner asserts that his trial "took place in an unfairly prejudicial

12  atmosphere" and that there was "a great amount of publicity" concerning the trial in Elko and Northern

13  Nevada. (*Id.*). The Nevada Supreme Court denied this claim on the merits, on appeal from the denial

14  of petitioner's first post-conviction habeas petition. The Nevada Supreme Court ruled that petitioner

15  "failed to provide the appropriate record, specific argument, or relevant authority to support his claim."

16  (Exhibit 81, at pp. 6-7). The factual findings of the state court are presumed correct. 28 U.S.C. §

17  2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

18  to, or involved an unreasonable application of, clearly established federal law, as determined by the

19  United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts

20  in light of the evidence presented in the state court proceeding.

21        This Court has reviewed the record with respect to petitioner's claim of ineffective

22  assistance of counsel. Due process requires that a trial court grant a defendant's motion for a change of

23  venue when the trial court is unable to seat an impartial jury because of prejudicial pretrial publicity or

24  an inflamed community atmosphere. *Harris v. Pully*, 885 F.2d 1354, 1361 (9th Cir. 1988). However,

25  failure to change venue is not ineffectiveness of counsel unless the failure to do so affects the fairness

26

17

of the trial.  *U.S. v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994).  In the instant case, petitioner has not

shown that the trial was unfair based on counsel's failure to move for a change of venue.  Counsel's

performance did not fall beyond an objective standard of reasonableness under prevailing norms.  Nor

has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he has not shown that, but for

the alleged errors of counsel, the outcome of the proceeding would have been different.  Petitioner's

counsel was not ineffective and this Court will deny habeas relief with respect to Ground 5(d).

### 5. Ground 5(e)

Petitioner contends:  "Trial and appellate counsel were ineffective in failing to move for

a mistrial or raise the issue of prosecutorial misconduct based on the prosecutor's reference to the O.J.

Simpson case in his closing argument."  (SAP, at p. 16).

Petitioner raised this claim in his first post-conviction habeas petition.  The state district

court found the following:

> The transcript does not support the assertion that a comparison was made,
> however, there was a reference to the O.J. Simpson trial by the
> prosecutor.  At the time the reference was made the court sustained
> defense counsel's objection and cautioned the jury not to consider the
> remark.  Trial counsel testified during the hearing, that he did not make
> a motion for mistrial since he believed that the instant trial offered Mr.
> Brown his best chance for an acquittal since the District Attorney had
> decided not to introduce DNA evidence.

(Exhibit 74, at p. 3).  The Nevada Supreme Court affirmed the district court's finding and ruled on the

ineffective assistance of counsel claim as follows:

> Appellant's claim of ineffective assistance of counsel is, in part, belied
> by the record.  Trial counsel did object to the prosecutor's statement.  We
> further conclude that appellant's claim that his counsel were ineffective
> in failing to move for a mistrial otherwise lacks merit.  First, at the
> evidentiary hearing on the instant petition, appellant's trial counsel
> explained that because certain inculpatory statements had been
> suppressed and because the State did not seek the admission of
> incriminating DNA evidence, he did not believe that a motion for a new
> trial was in appellant's best interest.  We conclude that appellant has not
> shown that his trial counsel's determination was objectively
> unreasonable.  Second, it appears that the district court sustained trial
> counsel's objection and admonished the State to avoid references to other

proceedings, thus eliminating the danger of prejudice.  Finally, appellate counsel was not ineffective in failing to raise this claim on direct appeal because it lacks merit.

(Exhibit 81, at p. 7).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

This Court has reviewed the record with respect to petitioner's claim of ineffective assistance of counsel with respect to both trial counsel and appellate counsel.  The *Strickland* standard applies to challenges of effective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has no constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

Neither trial counsel nor appellate counsel's performance fell below an objective standard of reasonableness under prevailing norms.  Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the alleged errors of counsel, the outcome of the proceedings would have been different.  Petitioner's trial and appellate counsel were not ineffective and this Court will deny habeas relief with respect to Ground 5(e).

**E.  Ground 6**

Petitioner contends: "The trial court erred by allowing purely prejudicial witness testimony.  As a result, Mr. Brown's conviction and sentence are invalid under the federal constitutional guarantees of due process and a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution."  (SAP, at p. 17).  Petitioner claims error relating to a specific line of testimony having to do with the amount of blood seen by witness Paul Jensen when he saw the victim.  Specifically, petitioner claims that Jensen's testimony at trial was prejudicial when he stated that the victim, Ms. Bailey, "had an awful lot of blood on her, her throat had been cut."  (Exhibit 27, at p. 7).

1   Petitioner claims that the statement was prejudicial and was elicited by the State to arouse sympathy.

2   (SAP, at p. 18).

3          The trial court allowed the testimony because it was "part of the *res gestae* and it's such

4   close occurrence to the actual incident that it's part of the story to the jury." (Exhibit 27, at p. 47).

5   Federal courts will not interfere with a state evidentiary ruling, but only consider whether the evidence

6   was so prejudicial that its admission violated fundamental due process and the right to a fair trial. *Fuller*

7   *v. Roe*, 182 F.3d 699, 703 (9th Cir. 1999). Witness Jensen's description included events that took place

8   soon after the victim escaped from her apartment after the assault, and thus, are within the natural

9   chronology of events that took place. While the statement in question was unfavorable to petitioner's

10  case, it was not prejudicial. This Court will deny habeas relief as to Ground 6.

11  **IV.    Certificate of Appealability**

12         In order to proceed with his appeal, petitioner must receive a certificate of appealability.

13  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951

14  (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a

15  petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

16  certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

17  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

18  constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this

19  threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among

20  jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to

21  deserve encouragement to proceed further. *Id.*

22         This Court has considered the issues raised by petitioner, with respect to whether they

23  satisfy the standard for issuance of a certificate of appealability, and determines that none meet that

24  standard. The Court will therefore deny petitioner a certificate of appealability.

25

26

**V.      Conclusion**

IT IS THEREFORE ORDERED that the second amended petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY**.

IT IS FURTHER ORDERED that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

IT IS FURTHER ORDERED that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

Dated this 20th day of April, 2009.

_____
UNITED STATES DISTRICT JUDGE

21